## Atwood M. Pray *versus* Samuel G. Stinson.

Where the sickness is occasioned by the climate, without the fault of the seaman, or of the officers of the vessel, the expenses of the cure, by the maritime law, are a charge upon the vessel.

But by the acts of Congress of the United States, if the vessel be furnished with a chest of medicines, accompanied with proper professional directions for administering them, in accordance with the provisions of those acts, the bill of the physician for attendance upon a seaman, sick on board at a port, is to be paid by such seaman.

And the rule is the same, whatever may be the nature of the disease, even if it be a violent and dangerous one, as the yellow fever.

The desire of the seaman to be removed on shore, cannot change the rights and the relations of the parties. His judgment, in such case, must necessarily be subjected to that of those who are by law entrusted with the prudential concerns of the vessel and crew for the common good of all.

Nor can the sickness and absence of the master on shore make a difference. The law devolves his duties, during such absence, upon the mate, who, in the absence of evidence to the contrary, it presumes, is able to perform them properly.

Where it was a proper case for medical advice, and the physician was called, without any request from the seaman, because the danger was such, that the laws of the place, as well as the feelings of humanity, required that he should be, the law will imply a promise from him who received the benefit of the services, to pay for them.

If the laws of the place require that the physician's bills for attendance upon a seaman should be paid by the vessel before she can leave port, and the amount is paid by the master, it must be considered as paid for the seaman's use during the voyage, in extinguishment of so much of his claims. In a suit against the owners for wages, it is not, therefore, necessary that such payment should be filed in set-off.

Statement of facts. It is admitted in this case, that the plaintiff sailed in the brig Partridge from Bath to Havana in Cuba, and that the defendant is part owner of said brig, and is liable to pay the plaintiff such sum as he is legally entitled to recover; that the plaintiff was in the employment of the defendant, as aforesaid, two months and fifteen days, in 1841, at seventeen dollars per month, amounting to forty-two dollars and fifty cents; that the plaintiff was paid seventeen dollars and seventeen cents at the time he shipped, and also hospital money, being fifty cents, making seventeen dollars and

sixty-seven cents. And it is also admitted, that the plaintiff was sick while said brig was at Havana, and that while sick he remained on board said brig; that said sickness was the yellow fever, of a very dangerous character, and that the defendant paid for the physician, who attended upon the plaintiff, twenty-nine dollars, being for medical attendance of said physician for the plaintiff during said sickness. And it is further admitted, that by the laws of Cuba, all foreign vessels are liable for physicians' bills, and cannot leave the port until they are paid, and that no pass to clear from the fort will be allowed, unless a certificate of the payment of said bills is made by the officer of the customs; that by the laws of Cuba aforesaid, there is a forfeiture to a considerable extent, if any seaman dies on board a foreign vessel without his having a physician from the port to attend upon him; and also there was, during said voyage and during said sickness, a medicine chest on board said brig, suitably and legally supplied with all necessary and proper medicines, agreeably to the laws of the United States; that during said time of sickness, the captain of said brig was sick and on shore, and that after the plaintiff had been sick two or three days, while lying on deck on his bed under an awning, he said he should rather go on shore to be sick than to remain on board of the brig; and that this was said in the hearing of the mate of said brig, the captain being sick on shore, at that time. The brig was of 194 tons burthen, and had on board a captain, mate, cook and five seamen.

It is further agreed by said parties, that the plaintiff was on board said brig in the capacity of seaman; that the sum paid by the defendant to said physician may be taken into consideration by the Court in the same manner as if the sum paid by the defendant to said physician had been filed in set-off; that the directions prescribed by law for the use of said medicines accompanied the medicines, and were in all respects such as the law required; and that if the Court should be of opinion that the plaintiff is liable to the defendant for said sum so paid, judgment shall be rendered for the defendant for his costs. But if the Court should be of opinion, that the plaintiff is not

liable for said sum, so paid by the defendant, then the plaintiff is to recover his wages as aforesaid with interest from the date of the writ, and his costs. If the Court should be of opinion that the demand of the defendant ought to have been filed in set-off, although judgment should be rendered for the defendant as aforesaid, yet the plaintiff shall be entitled to his costs up to and including April Term of the District Court, 1842.

*Danforth,* for the plaintiff, said that by the maritime law, it was well settled, that every sick seaman was entitled to be cured at the ship's expense; and contended that the law, in this case, was not changed by the statutes of the United States on this subject. The true construction of the U. S. St. of 1790, c. 29, and of 1805, c. 88, is believed to be, that. in cases where the medicine chest and directions are on board, and the proper persons present to administer the medicines, and thus are a substitute for the attendance of a physician, the owners are not liable; but in all other cases they are. *Brig George,* 1 Sumn. 151; same case before District Judge, ib. 591; Curtis on Rights of Seamen, 111. This was a dangerous case of the yellow fever, where the medicine chest was useless, and the captain was sick on shore, and incapable of administering medicine.

The plaintiff desired to be put on shore, and he should have been. The owners are clearly liable to pay the expenses of a seaman while sick on shore. 1 Peters' Adm. Dec. 256. The owners cannot avoid their liability by the refusal of the persons on board their ship to do their duty.

The laws of Cuba, which are to govern in this case, require that a physician should be called to a seaman sick on board a ship in Havana, and provide that the ship should be detained if it is not done. The physician, in this case, was called by the mate, without the request or desire of the plaintiff. He was then employed for the benefit of the owners, to prevent the detention of the vessel, as well as called by them; and they should not charge the expense to the plaintiff.

But if our own laws are to govern, the result will be the same. The physician was not employed at the request of the

plaintiff, and even if he had been, the owners had no right to pay the bills, and make the plaintiff their debtor.

*Wells*, for the defendant, contended that the laws of the United States had exempted the owners from the payment of the bills of a physician employed to attend upon a seaman on board their vessel, when there was a medicine chest on board, according to the provisions of those statutes. The laws of the United States make no distinction between different descriptions of sickness, or between cases in port or at sea. Abbott on Shipping, 481, note; 1 Pet. Adm. Dec. 256; *Harden* v. *Gordon*, 2 Mason, 541; *The Brig George*, 1 Sumn. 151; Gilpin's R. 447.

The statute regulations on this subject repeal the law before that time existing, as part of the maritime law. *Towle* v. *Marrett*, 3 Greenl. 22; *Comm.* v. *Kimball*, 21 Pick. 373.

It is no benefit to the seaman, to have the bills of physicians paid by the owners, because in such case there would be a corresponding reduction of wages. There is no more reason why such bills should be paid by the owner of a vessel, than by the owner of a house or a farm, where the person taken sick was at work.

The laws of the place, where the plaintiff was taken sick, made the owners liable to pay the bills, and the amount is so much paid to him. The plaintiff would only be entitled to the balance, and that has been paid to him, and the action must fail.

The opinion of the Court was drawn up by

SHEPLEY J.—The sickness may be considered as occasioned by the climate without the fault of the seaman or of the officers of the vessel. And in such a case, by the maritime law, the expenses of the cure are a charge upon the vessel. The act of Congress, c. 29, § 8, requires, that ships or vessels of a certain description should be provided with a chest of medicines, accompanied by proper professional directions for administering the same; and in default thereof that the master shall pay for all advice, medicine, or attendance of physicians.

By an additional act, c. 88, the provisions of the former act were extended so as to embrace a class of vessels including the one in which the plaintiff sailed. In the case of *Walton* v. *The Ship Neptune,* 1 Peters' Ad. Dec. 152, it was admitted, that the weight of authority required the construction then given to the first act of Congress; that, " the ship, by the act of Congress, is bound to furnish medicines or pay the physician's bill; but the sailor, when the ship is so furnished, must pay for chirurgical or medical advice and assistance."

And although learned judges have expressed their doubts, whether the act ought to have received such a construction, their reasons have never been deemed sufficient to authorize a change ; and this has been admitted to be the general and well established construction, subject to certain exceptions. And if such were not the original intention, there has been ample time for legislative interposition to effect a change and correct the error. The fact, that there has been no such interference in this commercial country for so long a course of years, tends strongly to establish the accuracy of the construction made by the judicial tribunals. The case of *Harden* v. *Gordon,* 2 Mason, 541, decided, that the vessel is liable, although provided with a chest of medicines, " for board, lodging and nursing, while the sick seaman is on shore." In the case of the *Brig George,* 1 Sum. 151, where the mate being sick went on shore for his own relief, for the safety of the crew, and for the interest of all concerned, it was decided, that all the expenses of the cure, including medical advice and attendance, were a charge upon the vessel, although she was provided with a chest of medicines as the act requires. In the case of the *Brig Forest,* Ware's R. 420, it was considered, that the act could exempt the owners from the charge for medical advice and attendance only, " when the seaman can have the benefit of the medicine administered under the printed directions for its use by the master or some person fit to be entrusted with so delicate a duty." And it was accordingly decided in that case, when the master, mate and four seamen were sick and unable to administer the medicines, that the

vessel was chargeable for medical advice and attendance upon the seamen on board, although properly provided with a chest of medicines. In the case of *Holmes* v. *Hutchinson*, Gilpin's R. 447, it is said, "it must now be taken to be the law of the United States under our act of Congress, that in the case of an ordinary sickness, not infectious or dangerous to the crew, so as to render a removal from the ship prudent or necessary, and when no such removal is made, and the ship is provided with a medicine chest according to the act of Congress, the medical advice of the sick seaman is not chargeable to the ship." It is not perceived that this doctrine, as has been supposed, is at all at variance with that asserted in the case of the *Brig Forest*. The general rule only is here asserted, which was admitted in the case of the *Brig Forest;* while very properly it was not allowed to operate in that case, because the seaman without his own fault was deprived of the very benefit, which it was the design of the act to afford him, when it exempted the owners.

There is nothing in this case to exclude it from the operation of the general rule, unless it can be found in the nature of the disease, the yellow fever; or in the sickness and absence of the master; or in the desire of the seaman to be removed from the vessel. Judge Peters, in a note, 1 Peters' Ad. Dec. 256, says; "where one of a crew is seized with an infectious disease, he should be removed from the rest and sent on shore at the ship's expense for the safety of the whole and the advantage of the owner, who must count on extra disbursements, if he will trade to ports and places liable to such casualties." This remark formed no part of an opinion in a decided case; nor can it be considered as a statement of any principle of law. It is but an expression of his opinion respecting the duty of the master under the circumstances stated. And the reason given by him for requiring it, is not the cure of the sick seaman, but the preservation of the health of the rest of the crew, and the advantage of the owners. It will hardly do for judicial tribunals to take upon themselves to establish one invariable rule for the treatment of a sick seaman

sinking under an infectious or other disease, instead of leaving it to be determined according to the circumstances attending each case, by those to whom the law has entrusted that duty. There may be ports and places, in which it would be most inhuman to pursue the course pointed out in that remark. Judge Hopkinson, in the case cited from Gilpin's R. seems to afford it some countenance, while he is not satisfied with the reasoning. He says, " This is well, when the sick man is taken from the ship for the safety of the crew and the advantage of the owner, but I do not feel the force of any claim on the part of the seaman, because the vessel is trading to a port or place liable to dangerous diseases. This he knew when he made his contract; and if it exposed him to extra expenses, as well as risk, it may be presumed, that he took them into the calculation in fixing the price of his services, the amount of his wages." There is nothing in the act of Congress authorizing any distinction respecting the liability of the owners or master. on account of sickness by different diseases, infectious or otherwise, or on account of the danger of the sickness. Nor is there any thing stated in this case, which shews, that the yellow fever might not be expected to be cured as certainly by the medical advice and attention to the sick man on board, as by a removal on shore, with such accommodations and comforts as a common sailor might obtain in that port. It is not to be presumed, that the officers of the vessel did not conduct with humanity and prudence, and for the best interest of the sick and all concerned. And it is not the duty of the Court in the absence of all testimony on these points, to determine, that the expenses of sickness occasioned by a certain disease are to be borne by the owners, when they are exempted in like circumstances, if it be occasioned by other diseases. There would be found as little reason as law for the promulgation of such a general rule, that would be irrespective of the circumstances of each particular case.

The desire of the seaman to be removed on shore cannot change the rights or relations of the parties. His judgment in such cases must necessarily be subjected to that of those

who are by law entrusted with the prudential concerns of the vessel and crew for the common benefit of all.

Nor can the sickness and absence of the master, on shore, make a difference in the case. The law devolves his duties, in such case, upon the mate, who, it presumes, is able to perform them properly. And there is no evidence in this case, that he did not. It is objected, that the services were not performed at the request of the plaintiff, and that payment cannot therefore be exacted of him. It appears to have been a proper case for medical advice, and the physician appears to have been called, because the danger was such, that the laws of the place, as well as the feelings of humanity, required, that he should be. And under such circumstances, the law will imply a promise from him, who has received the benefit of the services, to pay for them. In the case of *Holmes* v. *Hutchinson*, the physician was called by the master, and the seaman was considered as liable to pay for his services.

There is nothing therefore in this case, which exempts it from the operation of the general rule of law, which, as modified by the act of Congress, relieves the owners, and charges such expenses to the seaman.

It is agreed, that by the laws of the place the physicians' bills must be paid by the vessel, before she can leave the port. The amount therefore must be considered as paid for him from the vessel during the voyage, and therefore liable to be deducted from his wages. The vessel is regarded by the maritime law as his debtor, and the account is to be adjusted between him and her accordingly, by considering what she has paid for his use, to be paid in extinguishment of his claims.

*Judgment for the defendant.*